UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GRAY DISLA

              Plaintiff,

       v.

CITY OF NEW YORK, et al.,

              Defendants.

**MEMORANDUM & ORDER**
22-cv-6730 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Gray Disla has brought this suit against Defendants the City of New York ("City"), Detective Juan Jimenez ("Detective Jimenez"), New York Police Department ("NYPD") Officer John Doe Number One, NYPD Officer John Doe Number Two, and Federal Law Enforcement Officers Doe One through Ten (collectively, "Doe Defendants"). Plaintiff alleges that Defendants violated his Fourth, Fifth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 ("Section 1983") by depriving him of $8,700 as a result of an unlawful search and seizure and without due process of law. ECF No. 1 (Complaint) ¶¶ 15, 18, 21, 24.[1] The City and Detective Jimenez have moved for summary judgment on all claims against them, *see* ECF No. 36 (Defendants' Motion), which Plaintiff opposes, *see* ECF No. 39 (Plaintiff's Opposition). In conjunction, Defendants also move for sanctions. *See* ECF No. 36. For the reasons set forth below, the claims against the Doe Defendants are dismissed *sua sponte*. Defendants' motion for summary judgment is GRANTED in its entirety. Defendants' motion for sanctions is DENIED.

---

[1] The Court refers to the pages assigned by the Electronic Case Files system ("ECF"), except when quoting to deposition transcripts, where the Court cites to the original page number on the native document. Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations.

## PROCEDURAL HISTORY

Plaintiff's Complaint was filed on November 4, 2022.  *See* ECF No. 1.  The City filed an Answer on January 19, 2023.  *See* ECF No. 8 (City's Answer).  On February 17, 2023, the parties filed a proposed case management plan ("CMP"), *see* ECF No. 10 (Proposed CMP), which the Court adopted on February 21, 2023, *see* ECF No. 11 (Order Adopting CMP).

The CMP set March 20, 2023, as the date by which the Doe Defendants would be identified, *see id.* at 5, and the parties' joint letter flagged that Detective Jimenez had not been served, *see* ECF No. 10-1 (Joint Letter Describing Case) at 1 n.1.  Over a month later, on April 24, 2023, the parties filed a joint status report in which the City's counsel explained that (i) no other member of the NYPD (except Detective Jimenez) was present during the underlying incident, (ii) the City did not know the identities of the federal law enforcement officers involved, and (iii) it was unclear if Plaintiff had "taken any steps" to identify the Doe Defendants.  *See* ECF No. 13 at 2 (Joint Status Report).

On April 25, 2023, the Court directed Plaintiff to confirm, by May 3, 2023, that he had properly served Detective Jimenez.  Plaintiff failed to do so.  Accordingly, on May 5, 2023, the Court dismissed the action against Detective Jimenez without prejudice, pursuant to Fed. R. Civ. P. 4(m).  Following Detective Jimenez's dismissal, Plaintiff's counsel filed an affidavit of service and a letter motion requesting to vacate the dismissal and explaining why counsel "neglected to file" the affidavit of service.  *See* ECF No. 14 (Motion to Vacate Dismissal); ECF No. 14-1 (Affidavit of Service).  On May 11, 2023, the Court vacated its May 5, 2023, Order dismissing Detective Jimenez.  Detective Jimenez filed an Answer on May 23, 2023.  *See* ECF No. 16 (Jimenez Answer).

During discovery—the duration of which was nearly a year—the Court granted seven discovery extensions (principally because of Plaintiff's failure to comply with discovery obligations),[2] two motions to compel,[3] and a motion to quash,[4] and warned Plaintiff on seven occasions that failure to adhere to court orders may result in sanctions.[5]  On February 29, 2024, the City and Detective Jimenez filed a pre-motion conference letter in advance of a proposed motion for summary judgment.  *See* ECF No. 31 (Pre-motion Letter).  The summary judgment motion was fully briefed on May 24, 2024.[6]

## FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed.  Since 1989, Plaintiff and his family have owned and resided in a four-level building in Queens (the "Premises").  ECF No. 39-3 (Plaintiff's Rule 56.1 Counterstatement) ¶¶ 1–2.  The Premises consists of a basement where Plaintiff sleeps, a grocery store on the first floor, and two other floors where Plaintiff's family resides.  *Id.* ¶ 2.  On November 7, 2019, a magistrate judge in this district issued a warrant authorizing a search of the second floor of the Premises and seizure of certain items related to

---

[2]    *See* April 25, 2023 Text Order; August 2, 2023 Text Order; September 8, 2023 Text Order; October 17, 2023 Text Order; November 11, 2023 Text Order; December 18, 2023 Text Order (re-opening discovery); December 27, 2023 Text Order.

[3]    *See* August 2, 2023 Text Order; November 11, 2023 Text Order.

[4]    *See* November 22, 2024 Text Order.

[5]    *See* May 11, 2023 Text Order; August 2, 2023 Text Order; September 8, 2023 Text Order; October 17, 2023 Text Order; December 18, 2023 Text Order; December 27, 2023 Text Order; February 14, 2024 Text Order.

[6]    The motion papers consist of:  ECF No. 35 (Defendants' Notice of Motion); ECF No. 36 (Defendants' Memorandum of Law); ECF No. 37 (Defendants' Rule 56.1 Statement); ECF No. 38 (Defendants' Exhibits); ECF No. 39 (Plaintiff's Opposition, 56.1 Counterstatement, and Exhibits); ECF No. 40 (Plaintiff's Amended Response); ECF No. 41 (Defendants' Reply).

suspected child pornography offenses. *Id.* ¶ 3; ECF No. 38-2 (Search Warrant); ECF No. 39-1 (Search Warrant).

On the morning of November 14, 2019, federal agents and at least one NYPD officer, Detective Jimenez (collectively, the "Officers"), arrived at the Premises to execute the warrant. *See* ECF No. 39-3 ¶¶ 5–6, 8, 11. The Officers approached Plaintiff's mother, identifying themselves and explaining that they had a search warrant for the Premises. *See id.* ¶ 6. Plaintiff's mother told the Officers that her son was in the basement, and that he would take them upstairs and/or open the door. *Id.* ¶ 7. The Officers followed Plaintiff's mother down to the basement, where Plaintiff was sleeping. *Id.* ¶ 8. After the Officers entered the basement and woke Plaintiff, Plaintiff was shown the search warrant. *See id.* ¶ 11.

While initially Plaintiff recounted that he gave consent to search the entire Premises, *see* ECF No. 38-3 (Transcript of Plaintiff's CCRB Interview, dated November 21, 2019) at 17:7–14, 22:7–9, Plaintiff has since stated that (i) he did not give the officers consent but "didn't refuse," ECF No. 38-1(Transcript of Plaintiff's Deposition, dated October 13, 2023) at 61:7–22, and, most recently, that (ii) he "did not give [the Officers] permission," ECF No. 39-3 ¶¶ 12, 27. In any event, an unspecified number of the Officers searched all four floors of the Premises. *See id.* ¶¶ 12, 15, 24–25.

Plaintiff also initially recounted that while the other Officers searched the Premises, Detective Jimenez stood in the store on the first floor, "not moving," that he "never moved from there until it was already time to leave," and that neither Plaintiff nor his mother saw Detective Jimenez search anywhere in the house. ECF No. 38-3 at 24:5–25:4. At Plaintiff's deposition, he testified that he never saw Detective Jimenez search the Premises, *see* ECF No. 38-1 at 49:9–11,

but later testified that Detective Jimenez went to all the floors, including the basement. *See id.* at 71:6–73:25; ECF No. 39-3 ¶ 29.

After the search was completed and the Officers left the Premises, Plaintiff noticed that money was missing from a bookbag in the basement. *See* ECF No. 39-3 ¶ 18. As part of his business, Plaintiff kept cash in a black and red checkered bookbag. *See id.* ¶ 16. Prior to the Officers' search of the Premises, Plaintiff claims he had more than $30,000 in the bookbag. *Id.* ¶ 17. After the search, $8,700 was missing. *Id.* ¶ 18. This money was not the subject of the search warrant, nor did the search warrant return list any seized money. *See* ECF No. 38-2; ECF No. 39-1. Plaintiff did not see Defendant Jimenez or any other law enforcement officer remove the money from the Premises. *See* ECF No. 40 at 2; ECF No. 39-3 ¶ 22. Nor did Plaintiff see Detective Jimenez open or move the bookbag, take any money from the bookbag, or hold, carry, or remove any money from the Premises. *See* ECF No. 39-3 ¶¶ 19–22.

The following day, Plaintiff filed a complaint with the Civilian Complaint Review Board ("CCRB"). *Id.* ¶ 9. On November 21, 2021, two days after the incident, Plaintiff provided sworn statements to the CCRB. *See* ECF No. 38-3 at 1:1.

## LEGAL STANDARD

Summary judgment is appropriate where the movant meets its burden to show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To defeat summary judgment, a nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . and they may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005); *see also Trans Sport, Inc. v. Starter Sportswear, Inc.*, 964 F.2d 186, 188 (2d Cir.

1992) (noting that summary judgment cannot be defeated "on the basis of conjecture or surmise").  A nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]" *Id.*

In deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).  However, "when the facts alleged are so contradictory that doubt is cast upon their plausibility, the court may pierce the veil of the complaint's factual allegations and dismiss the claim." *Jeffreys* at 555 (citing *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 470 (S.D.N.Y. 1998)).  While district courts are duty-bound not to weigh the credibility of the parties at the summary judgment stage, "in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account." *Jeffreys* at 554.  Under these circumstances, the moving party must still meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor. *Id.*

## DISCUSSION

### I.    Plaintiff's Claims Against the Doe Defendants

As an initial matter, the Court *sua sponte* dismisses the Complaint as to the unidentified

Doe Defendants.  Plaintiff has had ample opportunity throughout the course of discovery to

identify the Doe Defendants yet has failed to do so.  Nor has Plaintiff suggested any likelihood of

identifying them.  "[W]here a plaintiff has had ample time to identify a John Doe defendant but

gives no indication that he has made any efforts to discover the defendant's name, . . . the

plaintiff simply cannot continue to maintain a suit against the John Doe defendant."  *Cruz v. City*

*of New York*, 232 F. Supp. 3d 438, 448 (S.D.N.Y. 2017); *see also Pund v. St. Francis Coll.*,

No. 23-cv-01498, 2024 WL 4145741, at *10 (E.D.N.Y. Sept. 11, 2024) (dismissing unidentified

John Does on summary judgment where they "were not difficult to identify through basic

discovery tools" and collecting similar cases).  Consequently, the claims against the Doe

Defendants are dismissed without prejudice.

### II.    Plaintiffs' Claims Against the City

The Court grants summary judgment on Plaintiff's claims against the City. Plaintiff

alleges that the City violated his Fourth, Fifth, and Fourteenth Amendment rights pursuant to

Section 1983 because the City's agents and employees unlawfully searched portions of

Plaintiff's residence and unlawfully seized and retained $8,700.  *See* ECF No. 1 ¶¶ 15–16, 18–

19, 21–22.  The Complaint attempts to assert claims against the City under a theory of

*respondeat superior*.  *See* ECF No. 1 ¶¶ 11, 16, 19, 22.  This is not a viable theory of liability

under Section 1983.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691

(1978) ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

A city or municipality can only be held liable for its own unconstitutional acts, not those of its

officers. *See, e.g., id.* at 694. Therefore, a plaintiff who brings Section 1983 claims against a city or municipality must identify a policy, custom, or practice that caused the constitutional injury. *See, e.g., id.* Here, however, the Complaint does not identify any such policy, custom, or practice. *See generally* ECF No. 1.

The first and only time Plaintiff identifies policies or practices is in response to Defendants' Motion. *See* ECF No. 40 at 5. Plaintiff asserts that the NYPD has policies and practices to (1) "accompany Federal law enforcement officers when those law enforcement officers are executing Search Warrants [. . .] in private locations within the confines of New York City" and (2) "notify and cooperate with federal agencies when arrests are made for the unauthorized use of Access devices[.]" *Id.* Setting aside that Plaintiff's failure to plead these purported policies or practices is fatal to Plaintiff's claims against the City and the analysis could end there,[7] summary judgment is warranted on three additional grounds.

First, Plaintiff offers no evidence that the policies and practices identified in his Opposition exist or that they were in effect on November 14, 2019, the day of the incident. At best, Plaintiff cites to a "New York City Patrol Guide at Procedure No. 208-47." *Id*. But Plaintiff does not attach the purported source as an exhibit, direct the Court to a website, or even include the date of the source. There is no evidence in the record of the policies Plaintiff identifies for the first time in opposing this motion, despite protracted discovery.

Second, Plaintiff offers no explanation as to how these policies caused his alleged constitutional violations. "Inherent in the principle that a municipality can be liable under

---

[7]     "[Parties] cannot amend their complaint simply by alleging new facts and theories in their memoranda opposing summary judgment." *Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 120 (S.D.N.Y. 2023) (collecting cases); *Cheng v. Via Quadronno LLC*, No. 20-cv-8903, 2022 WL 17069800, at *6 (S.D.N.Y. Nov. 17, 2022) ("Plaintiff may not properly raise new allegations in his opposition to Defendants' motion for summary judgment.").

§ 1983 only where its policies are the moving force behind the constitutional violation, is the concept that the plaintiff must show a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Anilao v. Spota*, 27 F.4th 855, 874 (2d Cir. 2022). Without an explanation as to how these policies and practices caused the alleged unlawful search of the Premises, seizure of $8,700, or retention of $8,700, Plaintiff's claims against the City must fail.[8]

   Third, there can be no municipal liability without an underlying constitutional violation. As explained below, *see infra* Section III, Plaintiff's claims of underlying constitutional violations do not survive summary judgment. Because Plaintiff fails to establish a predicate constitutional violation, he cannot sustain a *Monell* claim against the City. *See Zhang v. City of New York*, No. 23-7469-cv, 2025 WL 485392, at *3 (2d Cir. Feb. 13, 2025); *see also Thomas v. Genova*, No. 23-7452, 2025 WL 583182, at *5 (2d Cir. Feb. 24, 2025) ("[T]here can be no municipal liability where there is no underlying constitutional violation"). Accordingly, Plaintiff's claims against the City do not survive summary judgment.

### III. Plaintiff's Claims Against Detective Jimenez

   The Court grants summary judgment on Plaintiff's claims against Detective Jimenez. Plaintiff alleges that Detective Jimenez violated his Fourth, Fifth, and Fourteenth Amendment rights by unlawfully conducting a search beyond the scope of the warrant and unlawfully seizing and retaining $8,700. *See* ECF No. 1 ¶¶ 15–16, 18–19, 21–22. Even viewing the evidence in the light most favorable to Plaintiff, a reasonable juror could not find by a preponderance of the

---

[8] Plaintiff's Opposition also introduces the allegation that the officers damaged Plaintiff's electronic devices while executing the search warrant. *See* ECF No. 40 at 4. Plaintiff cannot amend his Complaint by asserting new facts or theories for the first time in opposition to Defendants' motion. *See supra* n. 7. Therefore, the Court declines to consider this allegation.

evidence that Plaintiff is entitled to a verdict on his unlawful search and seizure claims against Detective Jimenez; Plaintiff's mere speculation that Detective Jimenez took the $8,700 cannot substitute for proof. For the same reason, and because Plaintiff did not pursue meaningful post-deprivation state law remedies, Plaintiff's seizure and retention due process claim also fails.

### A.    Unlawful Search

The Fourth Amendment, which applies to state actors through the Fourteenth Amendment, protects individuals from unreasonable searches. *See* U.S. Const. amend. IV, XIV. "[W]arrantless searches are unreasonable by default, subject to only a few exceptions. Voluntary consent is one exception to the warrant requirement." *United States v. Franklin*, No. 23-6265, 2024 WL 4262060, at *2 (2d Cir. Sept. 23, 2024). "A warrantless search does not violate the Fourth Amendment if the owner or lawful custodian consents to the search." *United States v. Menendez*, No. 04-cr-219, 2005 WL 1384027, at *7 (S.D.N.Y. June 8, 2005). It is undisputed that the Officers had a warrant to search the second floor of the Premises, and Detective Jimenez was one of several Officers present. *See* ECF No. 39-3 ¶¶ 3, 5, 11. Defendants argue that, according to Plaintiff's own testimony, there is no dispute that (i) he gave the Officers permission to search the entire Premises, and (ii) Detective Jimenez did not search the basement. *See* ECF No. 36 at 11–12 (quoting transcript of Plaintiff's CCRB interview). Plaintiff responds that the material facts are disputed by contradictory testimony he gave four years after the underlying incident. *See* ECF No. 39-3 ¶¶ 12, 15 (quoting transcript of Plaintiff's deposition).

"As a general matter, a court will not make credibility determinations on a motion for summary judgment. However, summary judgment is appropriate if (1) there is nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony and (2) even after drawing all inferences in the light most favorable to the

10

plaintiff . . . no reasonable person could believe [his] testimony." *Hernandez v. Kirby Forensic Psychiatric Hosp.*, No. 14-cv-5910, 2019 WL 4640054, at *2 (S.D.N.Y. Sept. 24, 2019). Thus, "if a plaintiff's testimony is riven with contradictions and no 'hard evidence' exists that could show that his version of the events is not wholly fanciful, then this testimony will be insufficient on its own to create a genuine dispute of material fact." *Id.* That is the case here.

In Plaintiff's CCRB interview on November 21, 2019, a week after the incident, Plaintiff recounted that he read the search warrant when the officers arrived at the Premises and told them, "Well, but if it's for the second floor, we have nothing to hide. You guys search the whole house. No problem." ECF No. 38-3 at 17:7–11, 22:7–9. The CCRB investigator clarified, "So at that point you're telling them that they can search the whole house, including the second floor?" Plaintiff replied, "Yes. That's correct." *Id.* at 17:12–14, 22:10–11. In contrast, at Plaintiff's deposition on October 13, 2023, Plaintiff recounted that he did not give the officers consent but "didn't refuse." ECF No. 38-1 at 61:7–22. And in his Rule 56.1 Counterstatement, Plaintiff states that he "did not give [the Officers] permission." ECF No. 39-3 ¶¶ 12, 27. Without any "hard evidence" to show that his most recent version of the events is accurate, Plaintiff's deposition testimony is insufficient to create a genuine dispute of material fact regarding his consent to search the Premises. *See Hernandez* at *2–3.

Even if there were a genuine dispute of material fact as to whether Plaintiff consented to a search of the other floors, a reasonable juror could not find that Detective Jimenez searched the basement area where the money was kept. To be liable under Section 1983, Detective Jimenez must have been "personally involved in the constitutional deprivation." *EC ex rel. RC v. Cnty. of Suffolk*, 882 F. Supp. 2d 323, 353 (E.D.N.Y. 2012), *aff'd sub nom. E.C. ex rel. R.C. v. Cnty. of Suffolk*, 514 F. App'x 28 (2d Cir. 2013). "Personal involvement can mean either (1) direct

participation, (2) failure to remedy the wrong after learning of it, (3) creation of a policy or custom under which unconstitutional practices occurred, or (4) gross negligence in managing subordinates." *Id.* At his CCRB interview, Plaintiff recounted that Detective Jimenez stood in the store on the first floor, "not moving," that he "never moved from there until it was already time to leave," and that neither Plaintiff nor his mother saw Detective Jimenez search anywhere in the house. ECF No. 38-3 at 24:5–25:4. At Plaintiff's deposition, he initially testified that he never saw Detective Jimenez search the Premises, *see* ECF No. 38-1 at 49:9–11, but later testified that Detective Jimenez went to all the floors, including the basement. *See id.* at 71:6– 73:25. Plaintiff's statements are "riven with contradictions," and he does not offer any "hard evidence" to support his most recent version of events. *See Hernandez* at *2–3. Therefore, summary judgment is appropriate because (i) there is nothing in the record to support Plaintiff's allegations other than his own contradictory testimony and (ii) even after drawing all inferences in the light most favorable to Plaintiff, no reasonable person could believe such a fundamental reversal in Plaintiff's account of the incident. *See id*.

###### B.    Unlawful Seizure

The evidence on Plaintiff's unlawful seizure claim is weaker still, verging on the "wholly fanciful." *See Jeffreys* at 554. Even under Plaintiff's most recent version of events, in which he claims Detective Jimenez searched the basement where the money was kept, there is no evidence that any of the Officers, let alone Detective Jimenez, seized the money—only Plaintiff's rank speculation. Moreover, by Plaintiff's own account, multiple officers searched the basement where the money was kept, *see* ECF No. 39-3 ¶¶ 12, 15, 23–25, but Plaintiff fails to offer any non-speculative basis for his claim that Detective Jimenez seized the money. Plaintiff's own account is that he did not see Defendant Jimenez or any other law enforcement officer remove

the money from the Premises.  *See* ECF No. 40 at 2; ECF No. 39-3 ¶ 22.  Nor did Plaintiff see

Detective Jimenez open or move the bookbag, take any money from the bookbag, or hold, carry,

or remove any money from the Premises.  *See* ECF No. 39-3 ¶¶ 19–22.  Similar to the unlawful

search claim, no other evidence—like security footage, testimony from other individuals present

at the search, or a property receipt—is in the record.

Denying summary judgment under these circumstances would compel the trier of fact to

render a verdict premised on two levels of speculation.  *First*, jurors would have to speculate as

to whether Officers took the money during the search in the first place, and *second*, whether it

was Detective Jimenez, rather than any of the several other Officers searching the Premises, who

personally removed the money from the Premises.  Such speculation is impermissible.  *See*

*Mehra v. Bentz*, 529 F.2d 1137, 1139 (2d Cir.1975) ("If the circumstantial evidence presented

lends itself equally to several conflicting inferences, the trier of fact is not permitted to select the

inference it prefers, since to do so would be the equivalent of engaging in pure speculation about

the facts."); *JPMorgan Chase Bank, N.A. v. Yuen*, No. 11-cv-9192, 2013 WL 2473013, at *8

(S.D.N.Y. June 3, 2013) ("speculation cannot substitute for proof").  There is simply no evidence

in the record from which a reasonable jury could find that Detective Jimenez took $8,700 from

Plaintiff.  Therefore, Plaintiff's unlawful seizure claim against Detective Jimenez cannot survive

summary judgment.

### C.  Unlawful Seizure and Retention

The Fifth Amendment, which applies to state actors through the Fourteenth Amendment,

protects individuals from being deprived of their property without due process of law.  *See* U.S.

Const. amend. V, XIV.  Plaintiff alleges that Detective Jimenez violated his Fifth and Fourteenth

Amendment rights by unlawfully seizing and retaining $8,700, causing Plaintiff "the loss of the

13

use and of his personal property" without due process.  ECF No. 1 ¶¶ 13, 21–22.  Much of the

same impermissible speculation impairing the viability of Plaintiff's unlawful search and seizure

claims also undermines Plaintiff's unlawful seizure and retention claim.  To find by a

preponderance of the evidence that Detective Jimenez deprived Plaintiff of $8,700 without due

process, a jury must first find that Detective Jimenez took the money.  As discussed above, the

record does not support this prerequisite.

       Plaintiff's due process claim separately fails because Plaintiff did not pursue meaningful

post-deprivation state law remedies.  "A government official's random and unauthorized act does

not violate a person's right to procedural due process if a meaningful post-deprivation remedy is

available."  *Abdullah v. NYPD 30th Precinct*, No. 24-cv-0137, 2024 WL 325385, at *4

(S.D.N.Y. Jan. 29, 2024).  "Thus, a claim under Section 1983 asserting that a government

official has deprived a person of a property interest is not cognizable in a federal district court if

state law provides an adequate remedy for the deprivation of that interest."  *Id.*  Here, New York

state provides adequate post-deprivation remedies to address claims that a government official

deprived a person of his property interest.  *See, e.g., Moreno v. New York*, 69 N.Y.2d 432, 435

(1987) (describing alternative state remedies to recover seized property); *Boyle v. Kelley*, 42

N.Y.2d 88, 91 (1977) (property wrongfully seized is recoverable by a state replevin action or a

state proceeding brought under Article 78 of the New York Civil Practice Law and Rules).

       Even if there were enough evidence on the record for a reasonable jury to find that

Detective Jimenez took the $8,700, Plaintiff provides no evidence that he has pursued state law

remedies, nor that these remedies are inadequate.  Instead, Plaintiff argues that he does not have

the State law remedy of replevin at his disposal because the statute of limitations has passed.  *See*

ECF No. 40 at 4.  Yet "[t]he fact that a plaintiff failed properly to pursue the state court action,

and that it is now too late to do so, does not affect [the] due process analysis." *Nestle Waters N. Am., Inc. v. City of New York*, No. 15-cv-05189, 2016 WL 3080722, at *10 (S.D.N.Y. May 25, 2016), *aff'd*, 689 F. App'x 87 (2d Cir. 2017). "Where a state law remedy gives a party a meaningful opportunity to challenge the state's action, he is not deprived of due process simply because he failed to avail himself of the opportunity." *Id.* Therefore, Plaintiff's due process claim for seizure and retention of the $8,700 cannot survive summary judgment.

## IV.  Defendants' Motion for Sanctions

Defendants also move for sanctions, seeking (i) to preclude Plaintiff from offering evidence of any alleged psychological injuries and (ii) an adverse inference that certain deleted text messages would have been favorable to the defendants. *See* ECF No. 36 at 20–24. Because the Court grants summary judgment in favor of Defendants on all of Plaintiff's claims, the motion for sanctions is denied as moot.

## <u>CONCLUSION</u>

For the reasons set forth above, all claims against the unidentified Doe Defendants are dismissed without prejudice and the Clerk of Court is respectfully directed to terminate them from this action. Defendants' motion for summary judgment is GRANTED in its entirety and Defendants' motion for sanctions is DENIED. *See* ECF No. 36. The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
       May 27, 2025

15